IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISMAEL ACEVEDO ORTIZ, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 10-1753 |
| vs. | ) |
| | ) District Judge Gary L. Lancaster |
| DANIEL JEROME BAIRD, VINCENT | ) Magistrate Judge Maureen P. Kelly |
| PAUL KALWASINSKI, ERNEST BORING, | ) |
| SCOTT JOHN DAISLEY, KELLY | ) |
| LATTERNER, JOHN DOE #1, JOHN | ) Re: ECF No. 43 |
| DOE #2, JOHN DOE #3, JOHN DOE #4, | ) |
| Defendants. | ) |

## **REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

Plaintiff Ismael Acevedo Ortiz ("Plaintiff"), is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), and is presently incarcerated at the State Correctional Institution ("SCI") at Frackville, in Frackville, Pennsylvania.  Plaintiff filed this civil rights action pursuant to 42 U.S.C. §1983, bringing claims against Defendants Daniel Jerome Baird ("Baird"), Vincent Paul Kalwasinski ("Kalwasinski"), Ernest Boring ("Boring"), Scott John Daisley ("Daisley"), and Kelly Latterner ("Latterner") (collectively, "Defendants"), who all appear to be employed at SCI Cresson, Cresson, Pennsylvania, where Plaintiff was previously housed.  Plaintiff alleges that Defendants assaulted him and that Kalwasinski retaliated against him when Plaintiff threatened to file a grievance against Kalwasinski.  Plaintiff contends that Defendants' actions violated his rights provided by the First and Eighth Amendments to the United States Constitution.

Defendants have filed a Motion for Summary Judgment (the "Motion"), ECF No. 43, which is presently before the Court. For the reasons that follow, it is respectfully recommended that the Motion be granted in its entirety.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's claims stem from the confiscation of his phone/address book during a cell search conducted on April 2, 2009. ECF No. 6, ¶ 14. Plaintiff contends that he did not receive a confiscation slip for the book and consequently submitted a request form to the Security Captain, who informed Plaintiff that he should have received the book back. Id. at ¶¶ 14-16. According to Plaintiff, although Kalwasinski informed him sometime between April 22 and 29, 2009, that the book would not be returned, another Corrections Officer returned the book to him at about the same time. Id. at ¶ 18.

Plaintiff alleges that approximately three weeks later, on May 19, 2009, while he was walking towards the outside exercise yard, Kalwasinski summoned Plaintiff over to the side and asked Plaintiff what was in his shirt pocket. Id. at ¶¶ 19-20. When Plaintiff replied that it was his address book, Kalwasinski asked to see it and informed Plaintiff that he was not taking the book into the exercise yard. Id. at ¶ 20. Kalwasinski then ordered Plaintiff up against the fence for a pat down search. During the search, Plaintiff contends that Kalwasinski kept telling Plaintiff to spread his legs wider and touched him in an unprofessional manner. Id. When Plaintiff protested and informed Kalwasinski that he was going to file a grievance for sexual harassment against him, Kalwasinski allegedly pushed Plaintiff's head against the fence, handcuffed him and told him that he was placing him in the Restricted Housing Unit (RHU). Id. at ¶¶ 21-22.

Plaintiff contends that Baird then hit him in the stomach and Boring jumped on him causing him to land head first onto the concrete. In addition, Plaintiff alleges that Boring grabbed his face and poked him in the eye and that Kalwasinski punched Plaintiff in the back of the head while Daisley and Latterner kneed Plaintiff in the forehead and/or face. Id. at ¶ 23. Plaintiff claims that whenever he looked up Boring repeatedly struck him with a closed fist and that he also received numerous blows by the four John Doe defendants. Id. at ¶ 24. Plaintiff contends that he was dazed and bloody during the assault and "slipped in and out of consciousness." Id. at ¶ 25. Only when a John Doe Defendant yelled "get off of him the camera is rolling boys," did the beating stop. Plaintiff was then pulled from the ground and taken to the RHU. Id. at ¶¶ 26, 27.

Plaintiff contends that a John Doe Defendant told the medical personnel to clean Plaintiff's wounds before photographing his face and that they refused to take photographs of his other injuries. Id. at ¶¶ 31, 34. Specifically, Plaintiff claims that he suffered numerous bruises and abrasions to his arms, legs, torso and the back of his neck in addition to lacerations to the upper cheek area and along his jaw line. Id. at ¶¶ 33, 34. Plaintiff alleges that he subsequently received two falsified misconducts charging him with assaulting Defendants Baird and Kalwasinski and refusing to obey an order. Id. at ¶ 35. Plaintiff also complains that no one intervened to stop the beating. Id. at ¶ 36.

In addition to the allegations in the Complaint, Plaintiff testified at a deposition that while in the "search position" and up against the fence, he "turned," at which point Kalwasinski pushed his body into the fence causing the whole front of Plaintiff's face hit the gate. Id. at pp. 40, 41-42. Plaintiff acknowledged that "they" said he was "swinging" at Kalwasinski, but testified that he couldn't remember any of that because "everything went black." Id. at p. 42. Plaintiff,

however, was able to recall being on the ground seconds later, "all twisted up," and that when they finally put him "in a regular position" on his stomach, they handcuffed him behind his back.[1] Id. at p. 42. At that point, Plaintiff testified, he was "getting punched everywhere," and that Kalwasinski specifically punched him in the head and on the back of his neck. Id. at pp. 42-43.

Plaintiff also testified that Boring, in addition to punching Plaintiff all over his back, "put his hand" in Plaintiff's right eye and tried to yank it out. Id. at p. 43. When asked about Defendant Baird, Plaintiff testified that Baird repeatedly punched him on both sides of his face and "maybe" in his shoulder and back area, and that his face was being scraped by pebbles and rocks at the time. Id. at pp. 43-44. Plaintiff also allowed that, while he was being held down, Defendant Latterner kneed him in the forehead three or four times and that the blows were so scary that he thought his "neck was going to get snapped." Id. at p. 44. According to Plaintiff's testimony, Defendant Daisley also punched him in the face and perhaps in his shoulder. Id. at p. 45. Plaintiff testified that following the assault, "everybody" would ask "hey, what's wrong with you" because he was "walking all beat up and they could see it." Id. at p. 47. He also testified that his whole body was sore; that he had bruises under his armpits and on the sides of his torso; that he had scratches everywhere; that his eyes were hurting and he had blurred vision from where Boring tried to pull his eye out. Id. at pp. 45-46.

Plaintiff initiated this action on December 29, 2010, by filing a Motion for Leave to Proceed *In Forma Pauperis*. ECF No. 1. That motion was granted on February 24, 2011, and on March 25, 2011, Plaintiff filed the instant Complaint ("the Complaint"). ECF No. 6. Therein, Plaintiff purports to bring a First Amendment retaliation claim against Defendant Kalwasinski

---

[1] Plaintiff also testified, however, that they handcuffed him before he was went to the ground. Id. at p. 42-43.

4

(Count I); an Eighth Amendment excessive force claims against all of the Defendants (Count II); and state law claims for assault and battery against all of the Defendants (Count III). Id. at p. 5.

Defendants filed the instant Motion on July 31, 2012, to which Plaintiff responded on September 24, 2012. ECF Nos. 43, 49. As such, the Motion is now ripe for review.

**B.     STANDARD OF REVIEW**

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R.Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Matreale v. New Jersey Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007).

**C.     DISCUSSION**

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423.

### 1. Eighth Amendment Excessive Force Claim (Count II)

Plaintiff alleges that Defendants deprived him of his right to be free of cruel and unusual punishment as provided by the Eighth Amendment to the United States Constitution.

Under the Eighth Amendment, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted . . . ." U.S. Const. Amend. VIII. See Ingraham v. Wright, 430 U.S. 651, 664 (1977). The Eighth Amendment's prohibition on "cruel and unusual punishment" protects prisoners from the use of excessive force or the unnecessary and wanton infliction of pain that offends contemporary standards of decency by prison officials. Betts v. New Castle Youth Dev. Ctr., 621 F.3d at 256; Adderly v. Ferrier, 419 F. App'x 135, 138 (3d Cir. Mar. 10, 2011). See Hudson v. McMillian, 503 U.S. 1, 8–9 (1992).

When reviewing Eighth Amendment excessive force claims, the Court must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), citing Hudson, 503 U.S. at 7. To resolve the inquiry, Courts are to consider:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009). Courts, however, generally defer to the judgment and policies of prison officials who are charged with maintaining internal order and discipline in the prisons and often must make snap decisions in volatile and dangerous situations. Hudson v. McMillian, 503 U.S. at 6. Officials must balance the threats presented by prison unrest to prison workers, inmates and administrators "against the harm inmates may suffer if guards use force." Id.

Defendants in the instant case argue that they are entitled to summary judgment on Plaintiff's Eighth Amendment claim because the force that was used against Plaintiff was not excessive and, thus, constitutional. In so arguing, Defendants rely on the Extraordinary Occurrence Report generated the day after the incident, which includes four Employee Reports of the Incident ("Incident Report"); Medical Incident/Injury Reports ("Injury Report") documenting the injuries sustained by Plaintiff and the officers who were involved in the incident; the Misconduct Reports issued against Plaintiff after the incident; and the Discipline Hearing Reports that followed. Defendants have also submitted Plaintiff's deposition testimony, videos capturing the incident, and photographs taken of Plaintiff following the incident.

The Extraordinary Occurrence Report, which appears to have been prepared by Major of the Guard David Jadlocki, reflects that an internal investigation was conducted by Corrections Officer F. Pirozzola and that an external investigation was also conducted by the Pennsylvania

7

State Police. ECF No. 46-1, pp. 3, 4, 5. The Report categorizes the incident as an "Inmate on Staff Assault Without a Weapon Resulting in Treatment by a Medical Professional at the Facility," and describes the occurrence as follows:

> On May 19, 2009 at approximately 1317 hours, CO2 Kalwasinski was on assigned post at the inmate large gate. While CO2 Kalwasinski was conducting a pat search on inmate FY 3422 Ortiz, Inmate Ortiz turned and began to swing with closed fists striking CO2 Kalwasinski on and around the head. CO3 Baird along with CO1 Boring and COT A. Sloan immediately responded and attempted to restrain inmate Ortiz. Inmate Ortiz refused all orders to cease his behavior and continued to resist. The responding officers did finally gain control of inmate Ortiz and were able to place handcuffs on him and escort him from the area to the RHU. All involved staff as well as Inmate Ortiz were assessed by Institution medical staff. All required documentation was completed and notifications made. The [State Police] was contacted at the request of CO2 Kalwasinski by Captain Chism for the purposes of pursuing charges on inmate Ortiz related to the assault. Involved staff were also extended SEAP, none required.

Id. at p. 3.

The Incident Report submitted by Kalwasinski also reflects that while he was conducting a random pat down of Plaintiff, Plaintiff spun around and began punching Kalwasinski. Id. at p. 6. Kalwasinski indicates that he attempted to take Plaintiff to the ground which was ultimately accomplished by Baird. In the process, Kalwasinski states that he sustained a cut on his left ear, swelling of his right cheek and abrasions on both knees. Id. at p. 7. In fact, the Injury Report prepared by the nurse who subsequently examined Kalwasinski indicates that he had an abrasion on the top of his left ear, redness to his right cheek and right ear, and abrasions on both knees. Id. at p. 18.[2] It was recommended that Kalwasinski follow up with "panel of physicians as needed for injuries/tetanus." Id.

---

[2] Although the names of the Defendants have been redacted from the Injury Reports submitted on their behalf, the injuries reported therein correspond precisely with those reported by each Defendant. Moreover, other indicia in the Injury Reports, such as reference to the particular Defendant's title, has permitted the Court to infer which Defendant is the subject of a particular Injury Report.

Defendant Baird's Incident Report states that he observed Plaintiff assaulting Kalwasinski and "immediately responded to the area and took [Plaintiff] to the fence and onto the ground in an attempt to control [him]." Id. at p. 10. Baird indicates that, at that time, other officers who responded to the incident arrived and took control of Plaintiff but, apparently, not before Plaintiff punched Baird in the left side of his head. Baird also indicates that he received multiple cuts to his left hand and abrasions to his left temple and both knees. Id. at p. 11. The nurse who subsequently examined Baird indicated in the Injury Report that he sustained abrasions on his left little finger, left palm, left side of his forehead, left knee and right shin. Id. at p. 16.

Defendant Boring's Incident Report indicates that, while he was counting inmates entering the yard, he heard a scuffle involving Kalwasinski and an inmate and responded to assist Kalwasinski. Boring further states that he helped to subdue Plaintiff and was keeping watch to make sure that no other inmates were going to get involved in the altercation or attempt to assist Plaintiff. Id. at p. 12. Boring allowed that he received abrasions to the back of his left hand and a bruise on his right hand. Id. at p. 13. Indeed, the nurse who prepared the Injury Report on Boring indicates that he had an abrasion on the back of his left hand and ecchymosis on his right hand. Id. at p. 20.

An Incident Report was also submitted by Corrections Office Trainee Adam Sloan, who is not a named defendant in this action, wherein he states that he was patting down inmates going into the yard and glanced at Kalwasinski just as Plaintiff "started to turn on Kalwasinski." Id. at p. 8. Sloan indicates that at that point Kalwasinski "started to radio control" at the same time Plaintiff started to swing at Kalwasinski. According to Sloan, he grabbed Plaintiff, other Corrections Officers "jumped on" and they eventually got Plaintiff handcuffed. Id. Sloan states

9

that, in the process, he suffered a scrape on his right arm and right knee. Id. at p. 9. The nurse who examined Sloan following the incident noted in the Injury Report that he had an abrasion to his right arm just above the elbow and an abrasion to his right knee. Id. at p. 14.

In contrast, the Injury Report on Plaintiff indicates that only he suffered a small abrasion on the left side of his forehead and specifically states "no other injuries noted." Id. at p. 22. Moreover, when Plaintiff was asked what happened by the nurse who examined him, Plaintiff's only response was, "I was kicked." The nurse further noted that Plaintiff voiced no other complaints. Id. Indeed, the photographs of Plaintiff that were taken shortly after the incident show only some redness on the left side of his forehead and a small abrasion on his left temple.[3]

The evidence also shows that Plaintiff was issued two misconducts following the incident. It appears that the first misconduct was issued by Defendant Baird, charging Plaintiff with assault and refusing to obey an order. Id. at p. 24. The second misconduct was issued by Kalwasinski and charges Plaintiff was assault. Id. at p. 26. Plaintiff, who apparently declined to say anything at the subsequent misconduct hearings, stating only that he "talked to the State Troopers," was found guilty of all three the charges. Id. at pp. 25, 27. Moreover, it appears from the record that criminal charges were also brought against Plaintiff for assaulting the Defendants. Id. at p. 49. The charges were reduced to disorderly conduct to which Plaintiff entered a plea of *nolo contendere*. Id.

Defendants have also submitted a DVD that contains videos of the incident from three different camera angles.[4] As Defendants concede, the videos are of poor quality and the view of Plaintiff is largely obscured by the corrections officers surrounding him. Moreover, the videos

---

[3] The copies of the photographs included in Defendants' Appendix are in black and white and, having been scanned into the record, are extremely dark and unhelpful to the Court. Defendants, however, have submitted color copies to the Clerk of Court as well as to the undersigned which clearly depict Plaintiff's head and face injuries.

[4] Defendants have also submitted copies of the DVD to the Clerk of Court and to the undersigned.

10

are taken from vantage points too far away to see precisely what is occurring. Notwithstanding these limitations, however, the Court is nevertheless unable to see any arm or leg movement by the corrections officers that would suggest that Plaintiff was being punched or kicked.

Viewing this evidence, even in the light most favorable to Plaintiff, it is not difficult for the Court to determine that Defendants have met their burden of establishing that no genuine issue for trial exists. The evidence establishes that Plaintiff, by his own testimony, turned around during a pat down while complaining to Kalwasinski. It also demonstrates that Plaintiff then punched Kalwasinski in the head, that the other officers responded accordingly, and were themselves injured trying to gain control of Plaintiff. Under these circumstances, it appears that Defendants applied only the amount of force necessary to maintain or restore discipline and to thwart a reasonably perceived threat to their safety or that of other inmates and the facility as a whole. Conversely, nothing about this evidence suggests that Defendants acted maliciously or sadistically to cause harm or that the resulting injury to Plaintiff was significant under the circumstances. See Brooks v. Kyler, 204 F.3d at 106. Indeed, the photographs of Plaintiff taken after the incident, as well as the Injury Report prepared by the nurse that treated him, show only some redness on his forehead and a small abrasion to his left temple. The photographs alone belie Plaintiff's assertions that he was repeatedly punched and kneed in the face by multiple officers and that he suffered a laceration to his cheek and jawline and has scrapes on his face.

The burden consequently shifts to Plaintiff to point to evidence which would enable a reasonable jury to find in his favor. Plaintiff has failed to present any such evidence. In fact, Plaintiff has not presented any evidence at all but merely argues that the evidence presented by Defendants is unreliable and should not be considered by the Court. Plaintiff's arguments, however, are without merit.

At the outset, the Court notes that it has taken into consideration Plaintiff's concerns regarding the poor quality of the videos submitted by Defendants and the inability to see Plaintiff or precisely when he was handcuffed. However, handcuffed or not, there is still no movement on the part of the corrections officers to suggest that they were punching or kicking Plaintiff.

Plaintiff also makes much of the fact that his face, which Plaintiff alleges had been bleeding, was cleaned prior to the photograph of his injuries being taken. Cleaning Plaintiff's face, however, would not obscure the lacerations to his upper cheek area and jaw line that Plaintiff claims to have suffered. In fact, removing the blood would arguable make the lacerations more visible. The photograph, however, reveals no such cuts.

Plaintiff also complains that Kalwasinski's statement in his Incident Report contradicts what Plaintiff has alleged in the Complaint, and that Kalwasinski has failed to respond to Plaintiff's allegation that Kalwasinski pushed Plaintiff into the fence yelling, "You want to be a smart ass?" Not only is it to be expected that Defendant Kalwasinski would dispute the claims that Plaintiff has lodged against him but, Plaintiff's latter complaint, is immaterial. Plaintiff's excessive force claim is based on his assertion that Defendants punched and kicked him after he was handcuffed and on the ground and not on the fact that he was pushed up against the fence in order to be patted down. See ECF No. 6. See also Holmes v. Whiteside, 2011 WL 3205297, at **1, 3 (E.D. Pa. July 27, 2011) (holding that the plaintiff had failed to state an Eighth Amendment claim where pushing the him "very hard" in the back during a routine pat down was not significantly disproportionate to the need to conduct a search and the plaintiff's injuries were not serious); Washam v. Klopotoski, 403 F. App'x 636, 640 (3d Cir. 2010) (holding that knocking books out of a prisoner's hands, slamming him to the ground, and handcuffing him, even absent a need to apply force, did not amount to excessive force where there was no

evidence the defendant acted with religious or racial animus); Rasheed v. Cox, 2007 WL 1314878, at *2 (E.D. Pa. May 3, 2007) (holding that a prisoner's allegations that a guard touched his penis, grabbed him by the neck, and a placed him in a bear hug during a pat-down search fell "well short" of stating an Eighth Amendment excessive force claim where the force was not alleged to have caused the prisoner any pain or injury); Anderson v. Sullivan, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (granting summary judgment for prison guards who pushed a prisoner into a bar and pulled his hands behind his back to handcuff him, holding that even if the prisoner did not refuse to be placed in handcuffs, the amount of force used "was not significantly disproportional to the goal of handcuffing [the prisoner]"). Moreover, the evidence shows, and Plaintiff does not dispute, that he attempted to turn around during a pat down which alone would give Kalwasinski cause for concern. See DC-ADM 203 § VI. G. 1.: Procedures - Searches of Inmate's Person (requiring every inmate being subject to a pat search to stand still with feet apart and arms extended outward).[5] In this Court's view, under these circumstances no fact finder could reasonably conclude that pushing Plaintiff into a fence, against which he was already leaning in order to be patted down, constitutes "excessive" force.

Plaintiff also argues that Sloan's statement in his Incident Report that Kalwasinski started to radio control renders his report unreliable because no report was filed from any staff member who was in radio control stating that Kalwasinski had called. Sloan, however, did not state that Kalwasinski spoke to anyone in radio control, but only that when Plaintiff "started to turn on [Kalwasinski], Kalwasinski *started* to radio control" when Plaintiff began to swing at him. ECF No. 46-1, p. 8. Further, Sloan's statement that he "grabbed [Plaintiff] and other CO's jumped on" does not, as Plaintiff suggests, contradict Baird's statement that he took Plaintiff to

---

[5] See www.cor.state.pa.us/portal/server.pt/community/doc_policies.

the ground.  Id.  Having found no contradiction, there is no basis upon which a fact finder could find Sloan's statement unreliable.

Finally, Plaintiff challenges Baird's statement in his Incident Report that Plaintiff punched him on the left side of the head.  Id.  Plaintiff argues that he would not have been able to punch anyone given the number of corrections officers that "jumped on."  Baird's Incident Report, however, states that he "took [Plaintiff] to the fence and onto the ground," and that he had no further contact with Plaintiff after that.  It therefore appears that Baird was punched before the other corrections officers intervened.

In summary, Plaintiff's arguments urging the Court to find Defendants' statements unreliable and inadmissible are unpersuasive.  Indeed, Defendants' statements largely corroborate one another and are supported by other evidence of record.  Thus, even if the Court were to ignore the Incident Reports submitted by the individual Defendants, the other evidence submitted by Defendants, including the Extraordinary Occurrence Report prepared by David Jadlocki, Injury Reports prepared by various nurses describing Defendants' and Plaintiff's injuries, and the photographs of Plaintiff taken shortly after the incident, establish the absence of a genuine issue for trial.  Plaintiff's failure to offer any evidence that would allow a jury to find otherwise is fatal to his Eighth Amendment claims.

### 2. First Amendment Retaliation Claim (Count I)

At Count I of the Complaint, Plaintiff alleges that Defendant Kalwasinski used excessive force against him in retaliation for Plaintiff having threatened to file a grievance against Kalwasinski for sexual harassment.

In order to establish a claim for retaliation under the First Amendment, an inmate must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) that an adverse action

14

was taken against him by a prison official; and (3) that there is a causal connection between the exercise of his constitutional rights and the adverse action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Defendants argue that this claim should be dismissed because Plaintiff is unable to show that he engaged in protected activity. Indeed, courts have held that the mere "threat to file a prison grievance does not satisfy the first element of a retaliation claim." Griffin-El v. Beard, 2013 WL 228098, at *8 (E.D. Pa. Jan. 22, 2013). See Stewart v. Varano, 2011 WL 3585409, at *1 (M.D. Pa. Aug.15, 2011) (threatening to file grievance is not protected activity for First Amendment retaliation purposes); Hunter v. Bledsoe, 2010 WL 3154963, at *4 (M.D. Pa. Aug. 9, 2010) ("The difficulty here for Plaintiff is that he only threatened to file a grievance; he did not actually file one. Since Plaintiff's conduct did not actually involve the exercise of a constitutional right he fails to satisfy the first element of a retaliation claim . . . ."); Bendy v. Hutler, 2007 WL 87632, at *2 (D.N.J. Jan. 9, 2007), *aff'd*, 341 F. App'x 799 (3d Cir. 2009) ("Plaintiff failed to plead that he filed a grievance against [Defendant], rendering his allegations fatally flawed for want of a constitutionally protected activity or that such activity motivated [Defendant's] acts"). See also Bridges v. Gilbert, 557 F.3d 541, 554-55 (7th Cir. 2009) ("it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance") (emphasis in original); Hunter v. Bledsoe, 2010 WL 3154953, at * n. 8 (finding no Third Circuit cases that hold mere threat to file prison grievance satisfies first element of a retaliation claim).

Because Plaintiff in this case did not actually file a grievance against Kalwasinski but merely threatened to do so, he did not engage in constitutionally protected activity in the first instance. Accordingly, he is unable to establish a First Amendment retaliation claim against

Defendant Kalwasinski, thereby entitling Kalwasinski to summary judgment on Count I of the Complaint.

### 3. Assault and Battery Claim (Count III)

At Count III of the Complaint, Plaintiff brings state law claims for assault and battery against all five Defendants. Defendants contend that they are entitled to summary judgment on these claims because they are protected by sovereign immunity.

Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly specifically waives sovereign immunity . . . ." 1 Pa. C.S.A. § 2310. Sovereign immunity applies to intentional as well as negligent torts. Story v. Mechling, 412 F. Supp. 2d 509, 518 (W.D. Pa. 2006), aff'd, 214 F. App'x 161 (3rd Cir. 2007). There are, however, exceptions to the rule: (1) vehicle liability; (2) medical/professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, and control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoid and vaccines. 42 Pa. C.S.A. §8522(b). The exceptions are to be strictly construed and narrowly tailored." Brown v. Blaine, 833 A.2d 1166, 1173 (Pa. Commw. 2003).

Defendants contend that because their actions do not fall within any of the nine enumerated exceptions that they are entitled to sovereign immunity on Plaintiff's assault and battery claims. In response, Plaintiff argues, correctly so, that sovereign immunity only applies to conduct that arises within the scope of their employment, which will be found where the conduct "is of a kind and nature that the employee is employed to perform; it occurs substantially

16

within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer." Strothers v. Nassan, 2009 WL 976604, at *8 (W.D. Pa. April 9, 2009), *quoting* Natt v. Labar, 543 A.2d 223, 225 (Pa. Commw. 1988). See 1 Pa. C.S.A. § 2310. Because using excessive force and committing an assault and battery is not the kind of conduct Defendants were employed to perform nor actuated to serve their employer, Plaintiff argues that Defendants were not acting within the scope of their employment and sovereign immunity does not apply.

As previously discussed, however, the evidence of record shows that Defendants' use of force was not excessive and was designed to defuse a potentially volatile situation that was initiated by Plaintiff. It cannot be disputed that it is the responsibility of prison guards to maintain order and discipline as well as the safety and security of the guards, inmates and the facility as a whole. It therefore appears that Defendants in this case were acting within the scope of their employment when they subdued Plaintiff after he assaulted an officer. Accordingly, sovereign immunity applies and Defendants are entitled to summary judgment on Plaintiff's assault and battery claims.

### D. CONCLUSION

For the foregoing reasons, is respectfully recommended that the Motion for Summary Judgment submitted by Defendants, ECF No. 43, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant

Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

                                          Respectfully submitted,

                                          /s/ Maureen P. Kelly
                                          MAUREEN P. KELLY
                                          UNITED STATES MAGISTRATE JUDGE

Dated: 15 February, 2012

cc:     The Honorable Gary L. Lancaster
        United States District Judge

        Ismael Acevedo Ortiz
        FY-3422
        SCI-Frackville
        1111 Altamont Boulevard
        Frackville, PA 17931

        All counsel of record via CM/ECF